■ JOSEPH A. FARRELL, JR., Appellant-Respondent, v NANCY A. CLEARY-FARRELL, Respondent-Appellant. [761 NYS2d 357] —Kane, J. (1) Cross appeals from a judgment of the Supreme

Court (Cobb, J.), ordering, inter alia, equitable distribution of the parties' marital property, entered December 31, 2001 in Greene County, upon a decision of the court, and (2) appeal from an order of said court, entered June 12, 2002 in Greene County, which denied defendant's application for counsel fees on appeal.

At the time of the parties' marriage in 1982, defendant had a high school education. During the marriage, she obtained an Associate's degree and was licensed as a dental hygienist. As part of the divorce proceedings, the parties agreed on all matters except the distribution of defendant's enhanced earning capacity. A trial was held on that issue, at which the parties and plaintiff's expert economist testified. Supreme Court determined that defendant's license and enhanced earning capacity were marital assets subject to equitable distribution, that the expert's figure for part-time employment was the proper value of this asset, and that plaintiff was entitled to 7½% of the present day value. Both parties appealed. Defendant then made a prospective application for counsel fees regarding the appeal. She appeals the court's denial of that application.

The enhanced earning capacity due to acquisition of a professional license during the marriage is clearly a marital asset subject to equitable distribution (*see Grunfeld v Grunfeld,* 94 NY2d 696, 702 [2000]; *McSparron v McSparron,* 87 NY2d 275, 286 [1995]; *O'Brien v O'Brien,* 66 NY2d 576, 584 [1985]; *see also* Domestic Relations Law § 236 [B] [1] [c]; [5] [c]). Plaintiff contends that Supreme Court improperly valued defendant's enhanced earning capacity on a part-time employment basis. We disagree. Plaintiff's expert presented scenarios for the court based on full-time and part-time employment, relying on statistics from the United States Department of Commerce. That agency defines full time as 35 or more hours per week, 50 weeks per year. Defendant was employed 32 to 34 hours per week, placing her within the part-time range.

The value of marital property is generally established as of the date of commencement of the matrimonial action, but trial courts are vested with discretion to determine the appropriate valuation date (*see Fuchs v Fuchs,* 276 AD2d 868, 869 [2000]; *see also Grunfeld v Grunfeld, supra* at 707). Supreme Court properly based its determination on the only expert evidence available, testimony of plaintiff's own expert. The expert utilized figures from 1999, as he apparently was instructed to do by plaintiff, so plaintiff cannot now complain that the court should have based its determination on defendant's earnings at the time of trial in 2001.

The parties also contest Supreme Court's distribution of 7½% of defendant's enhanced earning capacity to plaintiff, with plaintiff requesting a larger percentage and defendant asserting that no portion should be distributed to plaintiff. Equitable distribution does not mandate an equal division of marital assets (*see Arvantides v Arvantides,* 64 NY2d 1033, 1034 [1985]; *Brough v Brough,* 285 AD2d 913, 914 [2001]). Trial courts are granted "substantial discretion in determining what distribution of marital property will be equitable under all the circumstances" (*Owens v Owens,* 288 AD2d 782, 783 [2001]; *see Grunfeld v Grunfeld, supra* at 703). The nontitled party seeking a distributive share of enhanced earning capacity must demonstrate that he or she made a substantial contribution to the titled party's acquisition of that marital asset (*see Brough v Brough, supra* at 914), as opposed to overall contributions to the marriage (*see Gandhi v Gandhi,* 283 AD2d 782, 785 [2001]). Where only modest contributions are made by the nontitled spouse toward the other spouse's attainment of a degree or professional license, and the attainment is more directly the result of the titled spouse's own ability, tenacity, perseverance and hard work, it is appropriate for courts to limit the distributed amount of that enhanced earning capacity (*see Arvantides v Arvantides, supra* at 1034; *Brough v Brough, supra* at 916; *Gandhi v Gandhi, supra* at 785; *Mallet v Mallet,* 246 AD2d 904, 905 [1998], *lv dismissed* 91 NY2d 1002 [1998]).

Here, defendant certainly exerted extraordinary efforts to complete her degree and obtain her license. While attending school, she worked part time during most semesters and full time one summer, was primary caretaker for the children, regularly performed most of the household chores, and gave birth to a child mid-semester but still completed her course work. On the other hand, while his wife was in school, plaintiff remained the primary wage earner for the family, contributed meaningfully to household bills and the costs of defendant's education, performed some household chores and most of the outdoor maintenance, assisted with child care when he was available, built the family home by acting as general contractor and personally constructing significant portions of the home, and emotionally supported defendant in her endeavor to better herself, including acting as her clinical patient for her clinical board examinations. Both parties worked very hard during this period. However, the evidence indicated that plaintiff did not substantially alter his schedule due to defendant's schooling; plaintiff admitted that his duties around the house did not really change when defendant was in school, and plaintiff worked out of town for the duration of defendant's

education, requiring him to leave for work at 5:00 A.M. and occasionally remain away overnight or return late at night, leaving defendant to maintain the household and care for their young child while going to school. While defendant attended school and received her license as a dental hygienist, plaintiff was busy advancing his own career, gaining promotions and doubling his salary during the marriage. Under all of these circumstances, Supreme Court did not abuse its discretion in awarding plaintiff a modest portion of defendant's enhanced earning capacity (*compare Cozza v Colangelo,* 298 AD2d 914 [2002]; *Brough v Brough, supra; Gandhi v Gandhi, supra*).

Defendant argues that she was entitled to the requested $10,000 of counsel fees for her appeal. Trial courts are vested with considerable flexibility and discretion when considering counsel fee applications (*see De Cabrera v Cabrera-Rosete,* 70 NY2d 879, 881 [1987]; *Nelson v Nelson,* 290 AD2d 826, 827 [2002]). Factors to be considered include the financial circumstances of both parties, the relative merits of the parties' positions, the nature and extent of services rendered, and the complexity of issues involved (*see De Cabrera v Cabrera-Rosete, supra* at 881; *Matter of Van Horn v Dahoda,* 272 AD2d 791, 792 [2000]; *see also* Domestic Relations Law § 237 [a]). After payments of child support are subtracted from plaintiff's income and added to defendant's income, the parties are similarly situated financially. Additionally, the remaining marital assets were evenly distributed, the appeal was limited to one issue aside from these fees, the appeal was not frivolous or intended merely to prolong litigation, and defendant crossappealed. Consequently, Supreme Court did not abuse its discretion in declining to award prospective appellate counsel fees (*see Strang v Strang,* 222 AD2d 975, 979 [1995]).

Cardona, P.J., Mercure, Spain and Rose, JJ., concur. Ordered that the judgment and order are affirmed, without costs.